IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LAKISHA DAVIS<br>12314 Auburndale Avenue<br>Cleveland, Ohio, 44112 | ) ) ) ) | CASE NO:<br><br>JUDGE: |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| SQE DELIVERY, LLC<br>c/o Stat. Agent, Julio Laurent<br>871 Indian Lakes Boulevard<br>Clarksville, Ohio 45113 | ) ) ) ) ) ) ) | **COMPLAINT FOR VIOLATIONS OF THE FAIR LABOR STANDARDS ACT AND OHIO MINIMUM FAIR WAGE STANDARDS ACT** |
| -and- | ) ) | (Jury Demand Endorsed) |
| JULIO LAURENT<br>871 Indian Lakes Boulevard<br>Clarksville, Ohio 45113 | ) ) ) ) | |
| Defendants. | ) | |

Plaintiff Lakisha Davis, by and through undersigned counsel, as her Complaint against Defendants, states and avers the following:

### PARTIES.

1. Davis is an individual residing in Cuyahoga county, Ohio.

2. SQE Delivery, LLC ("SQE") is a domestic limited liability corporation with its principal place of business located in Cuyahoga county, Ohio.

3. During all times material to this Complaint, SQE was Davis' "employer" within the meaning of Section 3(d) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203(d); Section34a, Article II, of the Ohio Constitution; and the Ohio Minimum Fair Wages Standards Act ("OMWFSA").

4. Laurent is the owner, operator, and principal manager of SQE.

5. As owner, president, and CEO of SQE, Laurent supervised and/or controlled Davis' employment with SQE, acted directly or indirectly in the interest of SQE in relation to its employees, and was an employer within the meaning of section 3(d) of the FLSA.

6. Department of Labor regulations provide that employees may work simultaneously for two or more joint employers. 29 C.F.R. § 791.2(a). Joint employment occurs when the two employers are "not completely disassociated" from one another. *Id.* Joint employers are "responsible, both individually and jointly, for compliance with all of the applicable provisions of the act, including the overtime provisions. *Id*.

7. At all times referenced herein, Defendants jointly employed Davis are joint and severally liable for the harm to Davis described herein.

## PERSONAL JURISDICTION.

8. Defendants hire citizens of the state of Ohio, contract with companies in Ohio, and own or rent property in Ohio. As such, the exercise of personal jurisdiction over Defendants comports with due process.

9. Davis performed work in this judicial district, was paid unlawfully by Defendants pursuant to work performed in this district and/or was hired out of this district.

10. This cause of action arose from or relates to the contacts of Defendants with Ohio residents, thereby conferring specific jurisdiction over Defendants.

## SUBJECT MATTER JURISDICTION AND VENUE.

11. This Court has jurisdiction over the subject matter of this action under the FLSA, 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

12. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Davis' state law claims because those claims derive from a common nucleus of operative facts.

13. Venue is proper in this District because Defendants do a sizeable portion of their business in this District, and all of the wrongs herein alleged occurred in this District.

## COVERAGE.

14. At all times referenced herein, SQE formed a single enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r); and formed a single enterprise engaged in commerce within the meaning of Section 3(s)(1) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203(s)(1)(A)(ii), in that said enterprise at all times hereinafter mentioned had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that enterprise had an annual gross volume of sales made or business done of not less than $500,000.00.

15. At all times relevant to this Complaint, Davis was subject to "individual coverage" under the FLSA because she was engaged in commerce between the states on behalf of Defendants when she performed her primary job duties.

## FACTUAL ALLEGATIONS.

16. SQE is a delivery and logistics company who primarily provides "final mile" delivery services for Amazon.com.

17. At all times referenced herein, SQE operated out of Euclid, Ohio.

18. Davis is a former employee of Defendants.

19. Davis was first hired by Defendants as a delivery driver on or about January 17, 2020.

20. As a delivery driver, Davis' primary job duty was to deliver Amazon.com packages to Amazon.com customers utilizing Defendant's delivery vans.

21. At all times referenced herein, the delivery vans operated by Davis had a curb weight of less than 10,000 lbs.

22. Davis was paid by Defendants on an hourly basis.

23. Davis was assigned delivery routes by Defendants and was typically scheduled to work at least 40-50 hours per week, consisting of four or five 10-hour shifts.

24. At all times referenced herein, Defendants required that Davis complete all deliveries on her route no matter how long it took her.

25. Defendants required Davis to complete all of her deliveries even if it took her more than the hours she was scheduled to work.

26. Due to the nature of the work performed by Davis, it often took her more than ten hours to complete her deliveries each day.

27. Regular, everyday occurrences like traffic and weather often prevented Davis from completing her deliveries in exactly ten hours.

28. Defendants often assigned Davis routes that were too long be completed in ten hours, even in perfect conditions.

29. As a result of Davis' frequently working longer than ten hours per day, she regularly worked greater than the 40-50 hours per week she was scheduled.

30. Throughout Davis' employment with Defendants, Defendants regularly and systematically altered her time records to avoid paying her overtime.

31. Defendants regularly altered Davis time records to conform with her schedule rather than the hours she actually worked.

32. As a result of Defendant's practice of altering time records, Davis was systematically denied overtime pay.

33. At all times referenced herein, Defendants required Davis and other drivers to clock out for a 30-minute lunch, regardless of whether they actually took a lunch.

34. As a result of Davis' oppressive workload, she and other drivers often could not take any time to stop and eat a lunch.

35. Defendants knew that Drivers like Davis typically could not eat a lunch while performing their deliveries.

36. In or around February of 2020, a Human Resource representative for SQE, India (last name unknown) sent a message to all drivers through a phone app used by SQE, "Slack," warning that Drivers were required to clock out for a 30 minute lunch or that they would be written up ("Lunch Message.")

37. The thrust of India's Lunch Message was that drivers had to clock out, not that drivers had to take a lunch.

38. India concluded the Lunch Message by clarifying that "if you are working 5 or more hours a 30-minute lunch will be deducted no matter what":



**India** 10:34 AM
Good morning @everyone, I thank you all for being accountable for clocking in and making sure that you are keeping track of your in and out times. But what I am noticing is that a lot of you are failing to clock out for lunch and this can not be a continued issue. If this becomes a habit for some I will be forced to write you up. If you are working 5 hours or more a 30 minute lunch will be deducted no matter what. Thank you all and have a great rest of the day!!

 9 

39. As evidenced by the below message to fellow driver Naim Hasrouni, Defendants lied to drivers like Davis and told them that 30 minutes had to be deducted for a lunch break pursuant to Ohio law:

**Mar 10th**


**Naim Hasrouni** 11:12 PM
Hi India, I just noticed there was a adjustment for Wednesday March 4 with the time sheet I was asked to come in on my day off and started later then normal but I never took a lunch that day. But a 30 min lunch was docked thank you for your asisstance.

**Mar 11th**


**India** 10:31 AM
Good morning Naim, anytime you work 5 or more hours a break will be automatically be added whether you choose to take one or not. That is a State law that we can not change.


**Naim Hasrouni** 10:39 AM
Good morning India, I was trying to help get those packages out on my day off because they where behind that's why I didn't take lunch no problem have a good day.


**India** 10:50 AM
I do apologize and thanks and have a great day!

40. As a result of Defendants' constant pressure to clock out for lunch "no matter what" or face discipline, Davis regularly clocked out for lunch breaks she did not take.

41. Beginning in March of 2020, Defendants escalated their efforts to force Davis and other drivers to work off the clock.

42. In or around March of 2020, Laurent announced to all drivers that SQE would not pay them beyond 8:45pm, even if their duties required them to work later than this time.

43. Laurent further warned that employees who were clocked in past 8:45 pm would be subject to progressive discipline and then terminated.

44. Subsequent to March 1, 2020, Defendant had a practice and policy of altering time records to indicate a clock out time of 8:45pm when drivers worked past that time.

45. Defendants altered Davis' time records to reflect an 8:45pm clock-out time on several occasion on which she worked past that time.

46. Subsequently, Davis complained when she noticed that her clock-out times were being changed to 8:45pm on days in which she worked later.

47. On March 17, 2020, Davis complained to India and Laurent about her time being changed in ADP, Defendants' time keeping system.

48. India responded to Davis' March 17, 2020 complaint by pointing Davis to the following message that she had posted in the "general folder" in Slack regarding clock out times:



**India** 12:22 PM
Good afternoon, I know that this will answer a lot of questions about ADP. On 3/3/2020 Julio sent out a mass text in Slack advising that you will only get paid until 8:45pm! @Catrina Whitt has been stating this to you all for weeks now. Your clock out times will be 8:45 and any package that you did not deliver by that time will count against you. Any questions you can direct them to Julio. Have a great day!! @everyone

49. Laurent responded to Davis's complaint by stating that she was required to clock out by 8:45pm or she would face disciplinary action:



**Lakisha Shiree Davis** 12:23 PM
Hello I have questions about my time I noticed on ADP my punch out times has been changed to 8:45 even though that's not the time I was done working I'm not understanding this can you please explain.



**Julio Laurent** 12:26 PM
Good day

which date in reference

so i can look at what happened during the route

the message i sent the team several weeks back is that all work must be completed by 8:45

continuously not completing all work during the scheduled block of work will result in disciplinary actions

i need to better understand from you, which date is it you worked past 8:45 so that i can understand what kept you from finishing on time

7

50. Defendants willfully failed and refused to correct Davis' punchout times and threatened her with discipline as part of concerted effort to encourage, if not require, off the clock work.

51. As a result of Defendant's constant threats, Davis often felt pressured to clock out even though she continued to work.

52. Less than a week after Davis complained about not being paid for all hours worked, Defendants terminated her employment.

53. As justification for terminating Davis, Defendants claimed that she was a "poor performer."

54. At all times referenced herein, Defendants maintained a progressive discipline policy.

55. Davis never received any verbal discipline for any alleged poor performance.

56. Davis never received any written discipline for any alleged poor performance.

57. Defendants' stated reason for terminating Davis is a pretext for unlawful retaliation because Davis made complaints about not being paid for all hours worked.

58. Defendants' stated reason for terminating Davis is a pretext for unlawful retaliation because Davis made complaints about not Defendant's unlawful time shaving practices.

59. Upon information and belief, Defendants had a policy and practice of terminating drivers who complained about not being paid properly for all hours worked.

60. As a result of Defendants' Conduct, Davis has suffered and continues to suffer damages.

## COUNT I: FAILURE TO PAY OVERTIME IN VIOLATION OF THE FLSA
## (29 U.S.C. § 207).

61. Davis restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

62. The FLSA requires each covered employer such as Defendants to compensate all non-exempt employees at a rate of not less than 1.5 times the regular rate of pay for all work performed in excess of forty (40) hours in a work week.

63. Davis was not exempt from the right to receive overtime pay under the FLSA.

64. Davis is entitled to be paid overtime compensation for all overtime hours she worked.

65. At all times relevant to this action, Defendants willfully failed and refused to pay Davis overtime wages (of time and one-half of at least the applicable Ohio minimum wage) for all overtime hours worked, as required by the FLSA, in amounts to be proven at trial.

66. Defendants recklessly failed to investigate whether their failure to pay Davis an overtime wage (of time and one-half of at least the applicable Ohio minimum wage) for all of the overtime hours worked during the relevant time period violated the Federal Wage Laws of the United States.

67. Alternatively, Defendants intentionally misled Davis to believe that Defendants were not required to her all overtime wages due.

68. Alternatively, Defendants concocted a scheme pursuant to which they deprived Davis of the full amount of overtime pay she earned.

69. As a result of Defendants' failure to properly compensate Davis at a rate not less than 1.5 times the regular rate of pay for all work performed in excess of 40 hours in a work week, Defendants violated the FLSA, 29 U.S.C. §§ 201 et. seq., including 29 U.S.C. § 207(a)(1) and § 215(a).

70. Defendants' conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

71. Defendants lacked a good faith belief that their compensation practices complied with the FLSA.

72. Defendants knew that their compensation practices violated the FLSA but committed the violations anyways.

73. Defendants engaged in open and blatant wage theft against Davis and other drivers so that Laurent could continue to live in a $400,000.00 home while his drivers lived in squalor.

9

74. Davis is entitled to damages in the amount of her unpaid overtime compensation, plus liquidated damages as provided by the FLSA, 29 U.S.C. § 216(b), and other such legal and equitable relief as the Court deems just and proper, including her attorneys' fees and costs.

### COUNT II: FAILURE TO PAY OVERTIME IN VIOLATION OF THE OMFWSA, O.R.C. § 4111.03, *et seq.*

75. Davis restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

76. The OMFWSA requires that covered employees be compensated for every hour worked in a workweek including payment of all earned overtime compensation. *See* R.C. §§ 4111.03.

77. Defendants violated the OMFWSA with respect to Davis by failing to pay Davis overtime compensation for any hours she worked over 40 in a week.

78. As a direct and proximate result of Defendants' unlawful conduct, Davis has suffered and will continue to suffer a loss of income and other damages.

79. Having violated the OMFWSA, Defendants are liable to Davis pursuant to R.C. § 4111.10 for the full amount of her unpaid overtime and for costs and reasonable attorneys' fees.

### COUNT III: VIOLATION OF THE OHIO PROMPT PAYMENT ACT, O.R.C. § 4113.51. (Asserted Against SQE Only).

80. Davis restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

81. The Ohio Prompt Pay Act ("OPPA") required SQE to pay Davis all wages, including unpaid overtime, on or before the first day of each month, for wages earned by Davis during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of each month, for wages earned by Davis during the last half of the preceding calendar month. *See* O.R.C. § 4113.15(A).

82. Davis was not paid all wages due within 30 days of her performing the work that entitled her to overtime. *See* R.C. §4113.15(B).

83. Davis unpaid wages remain unpaid for more than 30 days beyond her regularly scheduled payday.

84. Davis has been harmed and continues to be harmed by SQE's acts and/or omissions as described herein.

### COUNT IV: VIOLATION OF 29 U.S.C. § 215(A)(3) - UNLAWFUL RETALITION IN VIOLATION OF THE FLSA.

85. Davis restates each and every prior paragraph of this Complaint, as if it were fully restated herein and further alleges as follows:

86. The FLSA, at 29 U.S.C. § 215(a)(3), makes it unlawful for an employer to retaliate against an employee who seeks to enforce her rights under the FLSA.

87. Davis was terminated because she made protected complaints under the FLSA.

88. Defendants violated 29 U.S.C. § 215(a)(3) of the FLSA and showed reckless disregard of the provisions of the FLSA concerning retaliation by taking adverse actions against Davis because she made protected complaints under the FLSA.

89. By reason of the foregoing acts of Defendants, Davis has suffered damages, including lost income. Davis is entitled to recover liquidated damages for these damages pursuant to the Fair Labor Standards Act.

90. Davis requests recovery of her attorney's fees and costs associated with this cause of action as provided by 29 U.S.C. § 216(b).

### COUNT V: RETALIATION BASED ON PROTECTED WAGE COMPLAINTS IN VIOLATION OF ARTICLE II, SECTION 34A OF THE OHIO CONSTITUTION.

91. Davis incorporates by reference the allegations in the preceding paragraphs.

92. Pursuant to Article II, Section 34a of the Ohio Constitution, "[n]o employer shall discharge or in any other manner discriminate or retaliate against an employee for exercising any right under this section or any law or regulation implementing its provisions or against any person for providing assistance to an employee or information regarding the same."

93. Davis was terminated by Defendants because she made protected complaints regarding Defendants' failure to pay her all wages due.

94. Defendants' termination of Davis constitutes a retaliatory adverse action against Davis in violation of Article II, Section 34a of the Ohio Constitution.

95. By reason of the foregoing acts of Defendants, Davis has suffered economic damages and has suffered from emotional distress.

96. Pursuant to Ohio R.C. §4111.14(J), Davis is entitled to "an amount set by the state or court sufficient to compensate the employee and deter future violations, but not less than one hundred fifty dollars for each day that the violation continued," as well as her attorney's fees and costs.

### COUNT VI: UNLAWFUL WITHHOLDING OF EARNED BENEFITS.
### (Asserted Against SQE Only).

97. Davis incorporates by reference the allegations in the preceding paragraphs.

98. Davis earned paid time off ("PTO") during her employment with Defendants.

99. Davis had accumulated a balance of unused PTO by the time she was terminated.

100. Davis' accumulated PTO time was an earned benefit under Ohio law, and Defendants were required to pay Davis the accumulated balance of her PTO absent a written policy saying that such time was forfeited. See *Korsnak v. CRL, Inc.,* 8th Dist. Cuyahoga No. 84403, 2004-Ohio-6116, ¶¶ 14-28.

101. SQE did not maintain any written policy that called for unused, accumulated PTO time to be forfeited.

102. Subsequent to her termination, Davis demanded that SQE pay her accumulated PTO time.

103. SQE refused to pay Davis her accumulated PTO time, in violation of Ohio law.

104. Davis has been harmed and continues to be harmed by SQE's acts and/or omissions as described herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Lakisha Davis requests judgment against all Defendants and for an Order:

(a) Issuing a declaratory judgment that the practices complained of herein are unlawful under the FLSA, 29 U.S.C. §§ 201 et seq.;

(b) Issuing a declaratory judgment that Defendant violated the recording-keeping requirements of the FLSA, 29 U.S.C. §§ 201 et. seq., including 29 U.S.C. § 211(c) and § 215(a), and the OMWFSA, R.C. § 4111.08;

(c) Awarding Davis her unpaid overtime wages and an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b);

(d) Awarding Davis all remedies provided for by the OPPA, including interest and/or $200.00, whichever is greater;

(e) Awarding damages, including actual, economic, non-economic, general, special, incidental, statutory, punitive, treble, liquidated, and consequential to Davis in an amount to be determined at trial;

(f) Awarding pre-judgment and post-judgment interest as provided by law;

(g) Awarding reasonable attorneys' fees and costs; and

(h) Awarding such other and further relief that this Court deems appropriate.

Respectfully submitted,

/s/ *Chris P. Wido*
Chris P. Wido (0090441)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, Ohio 44122
Phone: (216) 291-4744
Fax: (216) 291-5744
Email: chris.wido@spitzlawfirm.com

*Attorneys for Plaintiff Lakisha Davis*

## JURY DEMAND

Plaintiff Lakisha Davis demands a trial by jury by the maximum number of jurors permitted.

*/s/ Chris P. Wido*
Chris P. Wido (0090441)
**THE SPITZ LAW FIRM, LLC**

*Attorney for Plaintiff Lakisha Davis*